UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| L.F., individually and on behalf of L.W., a minor,<br><br>Plaintiff<br>v.<br><br>CASTON SCHOOL CORPORATION,<br><br>Defendant. | CAUSE NO. 3:25cv1073 DRL-SJF |

# OPINION AND ORDER

L.W. is a dyslexic student at Caston School Corporation. In January 2025, the school decided he was no longer eligible for special education services. L.F. (L.W.'s mother) requested a due process hearing under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. On review, a hearing officer decided in the school's favor.

L.F. filed this suit alleging the hearing officer's decision was inconsistent with the IDEA. Back in April of this year, Caston moved to dismiss L.F.'s complaint under Rule 12(b)(6) for failure to state a claim. L.F. had until April 24 to file her response. On April 10, with a pair of counsel having appeared for her, she briefed her pseudonymity motion. No response to the motion to dismiss came thereafter, though the court waited nearly two more weeks. On May 6, the court dismissed the case without prejudice, finding that L.F.'s amended complaint was "deficiently sparse." Judgment was entered the next day.

On May 29, L.F. filed a motion to amend and a motion for relief from judgment. In these motions, she asks for leave to file an amended complaint addressing the paucity of her allegations and to vacate the judgment dismissing her case. Today the court denies her motions.

"[I]t is 'well settled that after a final judgment, a plaintiff may amend a complaint under Rule 15(a) only with leave of court after a motion under Rule 59(e) or Rule 60(b) has been made *and the judgment has been set aside or vacated*.'" *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (emphasis original) (quoting *Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1179 (7th Cir. 1992)). This interplay between Rule 15 and Rule 60(b) was confirmed last year: "a party seeking to reopen [her] case and replead must first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025). Relief thus hinges initially on Rule 60(b).

"Relief under Rule 60(b) is an extraordinary remedy reserved for extraordinary circumstances." *Word Seed Church v. Vill. of Homewood*, 43 F.4th 688, 690 (7th Cir. 2022). L.F. relies on Rules 60(b)(1) and 60(b)(6)—the first requiring mistake, inadvertence, surprise, or excusable neglect, and the last requiring some other extraordinary circumstance. L.F. explains that she missed the deadline to file her response to Caston's motion to dismiss due to one of her lawyers being out of the country caring for a family member abroad. While abroad, L.F.'s counsel shares that her "incomplete" and "unsuccessful" attempts to communicate with staff due to "international time differences, limited internet connectivity abroad and the nature of the family situation" prevented her from meeting the April 24 deadline.

L.F. first argues excusable neglect. "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The court considers "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of

the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993); *see, e.g., Miller v. Chi. Transit Auth.*, 20 F.4th 1148, 1153 (7th Cir. 2021); *United States v. Cates*, 716 F.3d 445, 448 (7th Cir. 2013).

The most important factor is the reason for the delay. *See Miller*, 20 F.4th at 1153. Neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness," *Pioneer*, 507 U.S. at 388, leaving for decision what might be excusable. "[G]enerally attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant and regardless of the attorney's degree of culpability." *Longs v. City of S. Bend*, 201 F. Appx. 361, 364 (7th Cir. 2006). "If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good." *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 755 (7th Cir. 2015) (quoting *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986)). "[I]nexcusable attorney negligence does not constitute proper grounds for relief under Rule 60(b)(1)." *Helm v. Resolution Tr. Corp.*, 84 F.3d 874, 878 (7th Cir. 1996).

Mere "neglect due to a busy schedule is not excusable." *Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir. 2006); *see, e.g., Miller*, 20 F.4th at 1153; *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012). Sicknesses and deaths in the family, even when unexpected, are the usual affairs of life. They might distract and even consume one in their early moments, but before long time will afford opportunities to pause, communicate, and work out solutions to professional demands, either with co-counsel, opposing counsel, or the court. *See Harrington*, 433 F.3d at 548 (affirming district court's denial of Rule 60(b)(1) motion because "despite the deaths of his family members, [plaintiff] could have and should have contacted the district court and opposing

counsel to explain his circumstances and to work out amicable solutions"); *Jovanovic v. In–Sink–Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 896-97 (7th Cir. 2000) (counsel's "family crisis to which he had to attend" did not constitute excusable neglect); *Davila–Alvarez v. Escuela de Medicina Universidad Cent. del Caribe,* 257 F.3d 58, 61, 65 (1st Cir. 2001) ("lawyer's duty of diligence transcends both upheaval at work and personal tragedy").

Although the court sympathizes with counsel's situation of caring for a family member's recovery after childbirth in a different country, this explanation alone does not rise to the level of excusable neglect. Excusable neglect depends on what may be reasonably expected of a party in paying proper attention to her case under all the circumstances. *Pioneer*, 507 U.S. at 395. L.F. explains that this trip was preplanned. If so, this wasn't an emergent situation, or one in which counsel was unexpectedly called away without time to preplan casework or coverage. Lawyers do this all the time when they might be gone on an extended trip. They sometimes schedule calls in advance or periodically with staff or associates to keep tabs on cases too.

Being abroad from March 24 to April 13 might well put one behind and necessitate an extension (after all the motion to dismiss was filed on April 3 when counsel was gone), but it also leaves unexplained what L.F. did with the many days after counsel got back before any response was due on April 24, or the 24 days (April 13 to May 7) available to counsel before the court entered judgment. Perhaps had there been a jam, and counsel missed a day or two in getting a motion for an extension on file or something of that ilk after a taxing trip, the result would be different. But job one after returning stateside from an extended trip would be to see to professional obligations and deadlines. Not acting beforehand and not acting for 11 days

afterward, and indeed for a much longer time before judgment was entered, rings more of inattentiveness to litigation than a faultless mistake or something the law should excuse.

To smooth over this concern, L.F. explains that "[t]hose eleven days were not an unencumbered interval but a period in which counsel addressed the backlog that had accumulated during an extended absence"—all the more reason that counsel should triage a busy schedule and determine those matters with pressing deadlines, and those that necessitate extensions or accommodations. *See Miller*, 20 F.4th at 1153; *Keeton*, 607 F.3d at 883. Much can be done in a day, more in 11 days, much more in 24 days.

Even more can be done when two counsel have responsibility for the same case. L.F. does not adequately explain why she did not ask for an extension of time or why L.F.'s second counsel, even a new associate who was not abroad and who was actively litigating L.F.'s motion to proceed under a pseudonym, could not have responded to the motion to dismiss or filed a request for more time. Every associate should know the importance of a court-ordered or rule-based deadline. To the extent there is any hard distinction to be drawn between "desk-bound oversight" and international travel for family, as L.F. argues the point, there was plenty of both. On this record, there were multiple achievable solutions. Not acting was not excusable.

The most important factor is the reason for the delay, but ultimately the reason is not alone the decisive consideration, even if it might be difficult to overcome a very weak one with the other factors, such as short delay or little prejudice. *See Miller*, 20 F.4th at 1153; *United States v. McLaughlin*, 470 F.3d 698, 700-01 (7th Cir. 2006); *United States v. Brown*, 133 F.3d 993, 997 (7th Cir. 1998); *accord Satkar Hospitality, Inc. v. Fox Television Holdings*, 767 F.3d 701, 707 (7th Cir. 2014).

The court must balance all the factors, and one or the other may not ultimately drive the result. But at the start, the court concludes that L.F. has not provided a cogent reason for her delay.

On balance, another factor materially weighs against this motion, and the other two prove too light to set aside a final judgment. L.F. argues that her delay was short, but not as short as she might posit. She left the motion to dismiss unanswered and any extension unrequested for 21 days, and indeed 34 days by the time the court granted the motion and entered judgment. This may not be the worst delay; but, even filtering this with a fair dose of equity, it seems slow-moving by any reasonable measure, particularly when two counsel could lend their talents and resources to it.[1] *See, e.g., Peters v. Wal-Mart Stores E., LP*, 512 F. Appx. 622, 628 (7th Cir. 2013) (three weeks too long); *Knapp v. Evgeros, Inc.*, 322 F.R.D. 312, 316 (N.D. Ill. 2017) (five days too long).

Even after this delay, L.F. waited another 21 days after judgment before she moved to set it aside. Of course, at that point, she had a "reasonable time" to file the motion, Fed. R. Civ. P. 60(c)(1); *see Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. for Vista-Pro Auto., LLC*, 607 U.S. 155, 158 (2026), but whatever importance L.F. or her counsel place in L.W.'s IDEA rights as a student at Caston, they did not act with the same urgency with which they press the remedial merits of those rights now. Why wait a day or two, or even three, after notice of the judgment to file a short six-page motion.

[1] No one really speaks much about the impact on the judicial proceedings, though reasonably the court might be called to address a second amended pleading and another motion to dismiss before the merits of this appeal could be heard. Keeping front of mind the affront to the finality of a judgment by reopening the case in the first place, *see Kennedy v. Schneider Elec.*, 893 F.3d 414, 419 (7th Cir. 2018) (courts "must be careful not to undermine too lightly the finality of their judgments"); *Cincinnati Ins. v. Flanders Elec. Motor Serv.*, 131 F.3d 625, 628 (7th Cir. 1997) ("need for the finality of judgments is an overarching concern"), whatever duplication of effort another motion might entail would likely be otherwise fairly modest.

From there, L.F. argues that Caston will suffer no prejudice because IDEA appeals are decided on a closed administrative record and the school already knows its legal contentions. The first point confines the options on appeal too much, *see* 20 U.S.C. § 1415(i)(2)(C); *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 205 (1982); and the last point may assume a bit too much when the very failing of this pleading wasn't just that no one was heard to defend it, but because it never plausibly adumbrated how the independent hearing officer's decision contravened the IDEA, or what facts or conclusions were erroneous, or how the hearing officer otherwise erred in reaching a decision, appreciating the due weight that must be given her special expertise in education, *see Sch. Dist. of Wisconsin Dells v. Z.S. ex rel. Littlegeorge*, 295 F.3d 671, 675 (7th Cir. 2002); *Heather S. by Kathy S. v. Wisconsin*, 125 F.3d 1045, 1053 (7th Cir. 1997); *see, e.g.*, *Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.* 20 F.4th 835, 844 (4th Cir. 2021) ("Federal pleading standards are applicable to claims filed under the IDEA in federal court.").

Perhaps in a vacuum, this factor tends to favor the motion; but, on balance, it offers little to outweigh the other factors. After all, a "common [justification] is that the neglect didn't harm anyone, but it will not suffice if no excuse at all is offered or if the excuse is so threadbare as to make the neglect inexplicable." *McLaughlin*, 470 F.3d at 700-01 (citation omitted). L.F.'s reason is anemic in explaining the neglect here. And from there, no one could really say L.F. acted in bad faith, but no one could really say she acted in good faith either. Too much bewilders why the approach was so casual, so this last factor proves at best neutral. *See In re Kmart*, 381 F.3d 709, 716 (7th Cir. 2004) (finding the good faith factor inconclusive given counsel's less-than-extraordinary or diligent attempts to rectify the situation after a missed deadline).

L.F. has not met her burden of showing excusable neglect, so the court denies the motion to set aside the judgment under Rule 60(b)(1). That leaves for consideration Rule 60(b)(6), which requires a showing of "extraordinary circumstances." Fed. R. Civ. P. 60(b)(6); *see Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 891 (7th Cir. 2020) ("[j]udgments may not be reopened under Rule 60(b) except in compelling and extraordinary circumstances," and "[t]he need for finality of judgments is an overarching concern"). To determine whether "extraordinary circumstances" warrant relief under Rule 60(b)(6), the court "may consider a wide range of factors," including "the risk of injustice to the parties" and the "risk of undermining the public's confidence in the judicial process." *Buck v. Davis*, 580 U.S. 100, 123 (2017) (citation omitted). It is open-ended and flexible, allowing the court wide discretion to relieve a party from judgment, but, being mutually exclusive to the other Rule 60(b) subsections, it remains confined to truly extraordinary circumstances. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988).

L.F. accepts that conduct amounting to attorney neglect would be governed by Rule 60(b)(1) but insists that the combination of her counsel's time abroad, co-counsel's status as a new associate, and grave prejudice to her child tilts toward extraordinary. In short, what she adds to the equation under Rule 60(b)(6) is that a single missed deadline should not result in the permanent loss of a child's statutory rights under the IDEA. In particular, L.F. points out that she cannot refile because, under 511 Ind. Admin. Code § 7-45-9(a), a party aggrieved by a independent hearing officer's decision must file a petition for judicial review within 30 days of the decision. Here, the hearing officer issued her decision on November 23, 2025, and L.F. filed suit on December 22, 2025, so no new complaint would be timely even if filed immediately.

So many sports are games of inches, where a mere inch may mean the difference between a victorious goal and a devastating defeat. The law sometimes is a practice of days, each one sometimes more precious than it may seem in the moment, with one lost here or there seemingly inconsequential until working at the last minute, or beyond the last minute, time and again starts to accumulate such that eventually there is no good justification for doing so. Dragging one's feet invites a stubbed toe. The rules favor the diligent, and their equitable enforcement ensures compliance with all expectations. There would be no rules if there were no consequences.

The court dismissed this case without prejudice, but "without prejudice does not mean without consequence." *Powell v. Starwalt*, 866 F.2d 964, 966 (7th Cir. 1989) (cleaned up); *accord Tuke v. United States,* 76 F.3d 155, 156 (7th Cir. 1996) ("An attorney who files suit when the statute of limitations is about to expire must take special care . . . because a slip-up is fatal."); *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) ("We live in a world of deadlines. . . . The practice of law is no exception. . . . When parties wait until the last minute to comply with a deadline, they are playing with fire."). L.F. had many options to avoid this consequence—plan ahead, oppose the motion to dismiss, move for an extension of time, act diligently on counsel's return stateside, act promptly to reopen the time to respond once the deadline passed and before the court ruled, or immediately address the court's decision or judgment.[2] Visiting delay upon delay wasn't a good option.

The court cares deeply about all cases before it, not least this one that concerns a student's right to appropriate education. Weighing the "risk of injustice to the parties" and the "risk of undermining the public's confidence in the judicial process," *Buck*, 580 U.S. at 123, L.F. and L.W.

[2] It appears tolling was not an option. *See* Ind. Code § 34-11-8-1 (Indiana savings statute).

have not lost all independent review, or the justice that comes with that. Aside from the school's decision, they enjoyed independent review from a hearing officer after a hearing that spanned eight days and resulted in a 26-page opinion. Even now, after a sparse pleading, L.F. presents but one substantive sentence in briefing to provide any clue why the hearing officer got it wrong, and alone it barely moves the needle to highlight any injustice. The proposed second amended complaint (from the motion to amend) may allege more, but L.F. never takes the pleading's conclusions and explains why any one would have some merit to lend to this separate motion a measurable sense of injustice, not without the court scouring the record all its own.

Public confidence in the justice system stems in part from the finality of a judgment that has been entered after dutiful process and opportunities to be heard to influence both that process and that judgment. Further appeals sometimes are lost by a missed deadline; indeed, "ignoring deadlines is the surest way to lose a case." *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994) (brackets omitted). Rule 60(b)(6) acts as a reservoir of equity to achieve justice, but the law permits this rule to work in "narrow circumstances" of truly "extraordinary circumstances," a strict but essential view that preserves the finality of a judgment. *BLOM Bank*, 605 U.S. at 212-213. Final sometimes means just that—that there are consequences. The finality of a judgment is not alone extraordinary or inequitable, but commonplace and desired.

One issue with L.F.'s articulation of her Rule 60(b)(6) grounds for relief is that, even when taken as a whole, the core reasons L.F. believes the court should vacate the judgment revolve around reiteration of her counsel's neglect and, anew, only the consequence that followed. But "to use adverse effects as a reason to overlook the requirements is to reduce the incentive to comply and make litigation even longer and more complex than it is." *Powell*, 866 F.2d at 966.

After all, when lawyers tasked with the duty to advocate for their clients do not act, the court cannot act on what it does not have.

CONCLUSION

Accordingly, the court DENIES L.F.'s motion to set aside the judgment [20] and the motion to amend the complaint [21].

SO ORDERED.

October 5, 2026

*s/ Damon R. Leichty*
Judge, United States District Court